AO108(2/90) Application for Seizure Warrant

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

In the Matter of the Seizure of
(Address or brief description of property or premises to be seized)

All funds in PNC checking account number xxxxxx8289, held in the name of "Duane McKinney", up to the amount of $125,043.49, and including PNC Cashiers Check number 23657, and the funds behind said Cashiers Check, in the amount of $99,000.00, and all funds traceable to that Cashiers Check.

**APPLICATION AND AFFIDAVIT FOR SEIZURE WARRANT**

CASE NUMBER:

I, _____Ronald D. Williams_____ being duly sworn depose and say:

I am a(n) __Special Agent with the Internal Revenue Service__ and have reason to believe that within the jurisdiction of this Court there is now certain property that is subject to forfeiture to the United States, namely (describe the property to be seized)

> All funds in PNC checking account number xxxxxx8289, held in the name of "Duane McKinney", up to the amount of $125,043.49, and including PNC Cashiers Check number 23657, and the funds behind said Cashiers Check, in the amount of $99,000.00, and all funds traceable to that Cashiers Check

which are (state one or more bases for seizure under the United States Code)

> subject to forfeiture, pursuant to 18 U.S.C. § 981(a)(1)(A),18 U.S.C. § 981 (a)(1)(C) and 21 U.S.C. § 853(f)

concerning a violation of Title 18 United States Code, Section 1343 (wire fraud); 1956 and 1957 (money laundering), The facts to support a finding of Probable Cause for issuance of a Seizure Warrant are as follows:

SEE ATTACHED AFFIDAVIT HEREIN INCORPORATED BY REFERENCE AS IF FULLY RESTATED HEREIN

Continued on the attached sheet and made a part hereof.    ☒ YES   ☐ NO

Diane Lucas
Asset Forfeiture Unit, Criminal Division
(202) 514-8097

Signature of Affiant
Ronald D. Williams, Special Agent
Internal Revenue Service

Sworn to before me, and subscribed in my presence

_____        at Washington, D.C.
Date

_____        _____
Name and Title of Judicial Officer        Signature of Judicial Officer

# AFFIDAVIT IN SUPPORT OF APPLICATION FOR
# SEIZURE WARRANT

Items to be seized:

All funds in PNC checking account number xxxxxx8289, held in the name of "Duane McKinney", up to the amount of $125,043.49, and including PNC Cashiers Check number 23657, in the amount of $99,000.00, and all funds traceable to that Cashier's Check and the funds behind .

## **AFFIANT'S EXPERIENCE**

1. I am a Special Agent of the Internal Revenue Service-Criminal Investigation (IRS-CI) and have been so employed since February 22, 2003. As an IRS Special Agent, I am responsible for investigating possible violations of federal tax and criminal law, including violations of Titles 18, 26 and 31 of the U.S. Code. I have conducted numerous prior and ongoing investigations into violations of such federal crimes as the Money Laundering Control Act (Title 18), the internal revenue laws (Title 26), the Bank Secrecy Act (Title 31) and similar financial and non-financial offenses. I have participated in complex interstate criminal investigations with agents and detectives from the Federal Bureau of Investigation, the Department of Homeland Security, the Virginia State Police, the Arlington County Police and the Northern Virginia High Intensity Drug Trafficking Area (HIDTA) Task Force. I have received more than twenty (20) hours of training in federal search and seizure procedures and have participated in the preparation and execution of numerous search warrants.

2. Prior to conducting investigations as an IRS Special Agent, I obtained a B.S. in Business Administration from the University of the District of Columbia and graduated from the Federal Law Enforcement Training Center. I also received extensive training in how to conduct complex criminal and financial investigations. I have conducted numerous

investigations involving the analysis and tracing of funds through the American banking system and the tracing and documentation of asset acquisitions and expenditures, including the laundering of funds through the United States' financial system. I have become familiar with various methods used by criminals to conceal the source, identity and movement of funds obtained as the proceeds of crime.

3. I have previously participated in investigations involving money laundering in violation of 18 U.S.C. Section 1957, mail fraud in violation of 18 U.S.C. Section 1341, wire fraud in violation of 18 U.S.C. Section 1343, and bank fraud in violation of 18 U.S.C. Section 1344. I am familiar with most of the criminal offenses which come to light in complex financial crime and fraud investigations.

## APPLICATION PURPOSE

4. I am submitting this affidavit in support of an application for a seizure warrant pursuant to 18 U.S.C. Section 981(a)(1)(C) for certain assets of Duane MCKINNEY, which are the proceeds of an illegal scheme by Mr. MCKINNEY to defraud owners of real property located in the District of Columbia, Maryland, and possibly elsewhere and which are proceeds traceable to a violation of 18 U.S.C. Section 1343 (wire fraud). There is also probable cause to believe that the funds in said bank account and traceable thereto were involved in money laundering activity in violation of 18 U.S.C. Section 1956 and 1957. As such, the funds in the bank account and funds traceable thereto are subject to seizure and forfeiture pursuant to 18 U.S.C. Sections 981(a)(1)(A) and 982(b)(1) which incorporates 21 U.S.C. Section 853(f).

5. I am submitting this affidavit specifically to obtain a seizure warrant for the following assets of Mr. MCKINNEY: all funds in PNC checking account number xxxxxx8289, held in the name of "Duane McKinney," up to the amount of $125,043.49, and including PNC Cashiers Check number 23657, in the amount of $99,000.00, and all funds traceable to that Cashier's Check. Mr. MCKINNEY opened this bank account on about November 30, 2006 and he is the only authorized signer for this account.

6. I submit this affidavit because I have probable cause to believe the money wired into Mr. MCKINNEY'S bank account were the proceeds of a fraudulent scheme executed by Mr. MCKINNEY and involving use of forged deeds, false notarizations, and interstate wire transmissions in violation of 18 U.S.C. Section 1343. This ongoing scheme has involved multiple financial institutions, multiple real properties, and financial transactions for the purpose of laundering the proceeds of Mr. McKinney's ongoing wire fraud scheme.

7. I make this affidavit based on personal knowledge through investigative techniques and, in part, upon information derived from written statements made by witnesses and other law enforcement officers, representatives of financial institutions, and parties (or putative parties) to real estate transactions with Mr. MCKINNEY and review of bank records.

## BACKGROUND

8. On June 10, 2005, an Arlington County Police officer approached a car stopped near the intersection of Route 50 and Washington Boulevard in Arlington, County, VA. The car, a 2002 Black 745LI 4-Door BMW, was pulled over along the shoulder of the road. When the officer asked the apparent driver for his identification, DUANE MCKINNEY

produced a Virginia driver's license indicating that he resided at xxxxxxxxxxxxxxxxxxxxxxxxxx, Maryland.

9. During the officer's encounter with Mr. MCKINNEY, the officer ran Mr. MCKINNEY'S name for any outstanding warrants. The officer learned that Mr. MCKINNEY had a valid outstanding Failure to Appear warrant for a criminal case involving an assault and battery charge in Arlington County, VA. The officer arrested Mr. MCKINNEY on the outstanding warrant and advised Mr. MCKINNEY of his rights.

10. After Mr. MCKINNEY was arrested, there was no adult with a valid driver's license with Mr. MCKINNEY to remove the BMW from its location along the road in Arlington, Virginia. Therefore, in order to move the vehicle from its location, the Arlington County Police Department took custody of the car. Thereafter, officers conducted an inventory search of the vehicle.

11. During the inventory search of the vehicle, officers discovered a duffle bag containing $159,040 in cash and copies of deeds, cashiers checks, and other records pertaining to real estate transactions.

12. After the currency was discovered, Mr. MCKINNEY engaged in a discussion with Arlington County Police officers. During that discussion, officers asked Mr. MCKINNEY about the origin of the $159,040.00 found in the trunk of the BMW. Mr. MCKINNEY stated that he was a real estate investor. He indicated that he was President and founder of a non-profit organization called "The Brotherhood of Men, Incorporated," located in Washington, D.C., which was in existence for ten years. (Mr. MCKINNEY also indicated that he was a television producer for DCTV.) Mr. MCKINNEY stated that

he had withdrawn the $159,040.00 from the Bank of America in Washington, D.C., in incremental stages during the year.

13. Mr. MCKINNEY stated that one of the purposes of the "Brotherhood of Men, Inc." is to "quitclaim" property and to buy properties. MCKINNEY explained that he had cash in his BMW automobile to pay individuals who wanted to sell their real property to him.

14. Mr. MCKINNEY further told the Arlington Police that he was in Arlington, Virginia that day on his way to purchase two 16 passenger vans for Greenleaf Gardens Community Center in southwest Washington, D.C. Mr. MCKINNEY stated that Brotherhood of Men, Inc. hires youth and provides them with on-the-job training. He explained that the large sum of cash found in his BMW was also intended to be used to pay his young employees a stipend. Mr. MCKINNEY stated that he always carries large sums of cash and that it was not uncommon for him to have that amount in his possession. Mr. MCKINNEY said that he normally carries $25,000 – $200,000 in cash and that he stores the cash in the trunk of his vehicle.

15. Mr. MCKINNEY said that he purchased the 2002 Black BMW from Best Auto Sales in Arlington, Virginia for the purchase price of $47,000. He said that he purchased the BMW using a cashier's check and cash withdrawn from the Bank of America Account referenced above – which he referred to as an account in the name of the Brotherhood of Men (an alleged 501(C)(3) non-profit entity).

16. After I became aware of Mr. MCKINNEY'S arrest, I conducted an investigation with members of the HIDTA Northern Virginia Money Laundering Task Force, seeking to discover the origins of the $159,040.00 in cash.

17. During our investigation, I learned that Mr. MCKINNEY is or was involved in a number of lawsuits in D.C. Superior Court involving contests over the true ownership of real property. I and other investigators obtained a list of properties at issue in these court cases and decided to interview witnesses and otherwise to investigate the transfer and ownership of these properties.

18. My investigation reveals that Mr. MCKINNEY has been involved in the sales of numerous real properties that he does not own, but that he appears to own through his filing of false deeds. For example, on June 16, 2005, Mr. MCKINNEY received settlement proceeds from the sale of real property located at xxxxxxxxxxxxxxxx., Washington, D.C. 20002, through an interstate wire transfer in the amount of $295,328.38, into the Bank of America account 1922787468. But this was a piece of real property that Mr. MCKINNEY did not lawfully own. Rather, he sold the property after filing a forged deed at the Recorder of Deeds Office in the District of Columbia. The deed purported to give Mr. MCKINNEY effective ownership of the xxxxxxxxxxx property, through a quitclaim deed. The deed was dated July 4, 2004, but the owner, who supposedly had deeded the property to Mr. MCKINNEY in 2004, died on February 11, 1997.

19. My investigation revealed that proceeds from the 3rd Street property sale were wired into Mr. MCKINNEY's Bank of America number xxxxxx7468. After the money was wired into the bank account, it was withdrawn by Mr. MCKINNEY and a portion of that was used by him to obtain high end vehicles and in an effort to hide the proceeds of his illegal activity from law enforcement.

20. On July 29, 2004, a search warrant was executed at Mr. MCKINNEY'S last know address: xxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxx, Maryland 20774.  Agents found $22,000 in cash in a small safe in the back of his sister's bedroom closet.  These bills were wrapped in $2,000 bank straps.  These straps were traced back to Bank of America in Washington, DC where Mr. MCKINNEY had made the majority of his transactions and had been withdrawn in incremental stages from his Bank of America checking account.

21. On July 22, 2005, U.S. Magistrate Judge Deborah A. Robinson signed a seizure warrant to seize $295,328.38 from Mr. MCKINNEY'S Bank of America checking account.  At the time of the execution of the seizure warrant only $13,367.53 was remaining in the Bank of America account.

22. The $159,040 cash recovered from Mr. McKINNEY's vehicle was seized by law enforcement authorities and a civil forfeiture complaint was filed on December 15, 2005 in the District Court for the District of Columbia.

## PROBABLE CAUSE

23. During the investigation into Mr. MCKINNEY'S unlawful activities, I researched deeds at Prince George's County Recorder's Office and found additional properties that were either deeded to or deeded from Mr. MCKINNEY or the Brotherhood of Men, Inc. .

24. I will specifically discuss the investigation of one of the properties here: xxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxx Maryland 20743 owned by Garnette Woods ("Carmody Hills property").

25. The investigation revealed that on October 11, 2006, a deed and a supplement to the deed were filed in Prince George's County, Maryland Office of Recordation. Those documents indicated that an individual named Garnette M. Woods purportedly transferred ownership of the Carmody Hills property to Duane MCKINNEY on February 12, 2000. The deed was notarized by Kristen Vincent on February 12, 2000. The supplemental document was filed on October 11, 2006. It purports that Kristen Vincent notarized Garnette M. Woods' signature on the document indicating that there were no liens or mortgages on the property on October 10, 2006.

26. I interviewed Kristen Vincent, who stated she was a notary in the State of Maryland. Ms. Vincent stated that she met Duane MCKINNEY during the summer of 2006 and was a former girlfriend of Mr. MCKINNEY'S. Ms. Vincent was shown a copy of the recorded deed for the Carmody Hills property with her signature. Ms. Vincent stated that the deed was a forgery because it was not her signature. Additionally, she did not know Duane MCKINNEY in 2000. Ms. Vincent recalled that she had reported her notary supplies lost and notified the D.C. Police (completing Compliant Number 107301) August 4, 2006. She said that the last time she saw her notary supplies was while in Duane MCKINNEY'S truck.

27. I attempted to contact Ms. Woods to verify the Carmody Hills property transaction. I was not able to locate her, but was able to locate her niece, Mrs. Jeriesha Parker. Mrs. Parker stated that Mrs. Woods died on May 29, 2003. I informed Mrs. Parker that her aunt's signature appeared on a deed transferring her property to Mr. MCKINNEY. Mrs. Parker stated that she and another relative were heirs to Ms. Woods' estate and noticed

that someone had begun renovations on the Carmody Hills property and became concerned. She also added that she had hired an attorney to assist her in resolving her aunt's estate.

28. I contacted that attorney, Robert Shearer, about the Carmody Hills property. He gave me a copy of the death certificate and deed he had in his files. Mr. Shearer was faxed a copy of the February 12, 2000 deed by which Mrs. Woods purportedly agreed to transfer the Carmody Hills property to Duane MCKINNEY. The deed purported to contain Mrs. Woods' signature even though Mrs. Woods died on May 29, 2003.

29. Mr. MCKINNEY "sold" the Carmody Hills property to Kim Galbreath and Leonard Waldon on December 22, 2006. During our investigation into the Carmody Hills property transaction, I and other agents discovered that on December 22, 2006, Executive Title and Escrow, LLC., of Largo, Maryland, caused $125,043.49 to be wired from its account at the SunTrust Bank, located in Maryland, to PNC Bank, account number xxxxxx8289, located in the District of Columbia, held by Duane MCKINNEY as sole signatory.

30. On January 22, 2007, Lawrence O. Elliott, Jr., Settlement Attorney of Executive Title and Escrow, LLC, confirmed that a $125,043.49 wire was sent to Mr. MCKINNEY'S PNC Bank account number xxxxxx8289 as proceeds from the sale of the Carmody Hills property.

31. A settlement sheet produced by Mr. Elliott for the Carmody Hills property listed the seller as Duane MCKINNEY and the purchasers as to Kim Galbreath and Leonard Waldon. I submit that the evidence obtained during this investigation shows probable

cause to believe xxxxxxxxxxxxxxxxxxxxxxxxxxxx, Maryland was transferred to Duane MCKINNEY using forged deeds (in a scheme to defraud the true owners) and that the proceeds of the subsequent sale of the property-- like the xxxxxxx property – are the proceeds of criminal activity.

## **DISPOSITION OF FRAUDULENT PROCEEEDS**

32. On December 26, 2006, Mr. MCKINNEY withdrew $125,000 of the funds that he received from Executive Title and Escrow from his PNC Bank checking account number xxxxxx8289 and bought two PNC Bank cashiers' checks:  1) cashier's check number 35102 in an amount of  $120,000, made payable to Harvey L. Stone, and 2)  cashier's check number 35103 in an amount of $5,000,  made payable to Edna McKinney, Mr. MCKINNEY's mother.

33. Public record databases where searched to determine Harvey L. Stone's involvement with Mr. MCKINNEY.  Results revealed that a Harvey L. Stone lives in Portsmouth, Virginia and may also have a residence in Miami Florida.  This search was inconclusive.

34. On January 24, 2007, Mr. MCKINNEY negotiated cashiers' check number 35102 (payable to Harvey L. Stone in the amount of $120,000) by endorsing it "Not Used for purposes intended" and bought two smaller cashiers' checks:  1) cashiers' check number 29606 in an amount of $11,633.94, made payable to the D.C. Government, and 2) cashiers' check number 29607 in an amount of $108,000, made payable to Korey Stone.

35. Public record databases where searched to determine Korey L. Stone's involvement with Mr. MCKINNEY.  Results revealed that a Korey L. Stone lives in Olney, Maryland and

may be employed with JAT Construction Company however, this search was inconclusive.

36. On February 21, 2007, Mr. MCKINNEY negotiated the cashiers' check (number 26907) that he had asked be made payable to Korey Stone (in the amount of $108,000) by again endorsing it "Not Used for Purposes Intended" and bought cashiers' check number 23657, in an amount of $99,000, made payable to Korey Stone. The remaining $9,000 was deposited back into Mr. MCKINNEY'S PNC checking account number xxxxxx8289.

37. On February 27, 2007, Mr. MCKINNEY appeared at PNC Bank located in the District of Columbia and attempted to negotiate cashiers' check number 23657 in an amount of $99,000. A PNC Bank employee informed Mr. MCKINNEY that he would need to talk with the branch manager. Mr. MCKINNEY left the bank.

### CONCLUSIONS OF AFFIANT

38. Based on the investigation I have conducted along with other law enforcement agencies to include the Federal Bureau of Investigations, and the Department of Insurance, Securities & Banking of the District of Columbia coupled with my training and experience in these investigations, and the facts articulated in this affidavit, I submit that there is probable cause to believe that proceeds from a fraudulent sale of the Carmody Hills property were wired into PNC bank account number xxxxxx8289, and that an interstate use of the wires to further a fraudulent scheme was executed in violation of the federal wire fraud statute, 18 U.S.C. Section 1343. I likewise submit that there is probable cause that Duane MCKINNEY, by using such criminal proceeds in such

manner, and by removing funds from that same bank account, violated the federal money laundering statutes, including 18 U.S.C. Sections 1956 and 1957, and that funds up to the amount of $125,043.49 that are in that account or supporting cashiers checks drawn from that account are therefore subject to seizure for forfeiture under Title 18, U.S.C., Section 981 and Title 21 U.S.C. Section 853(f).

39. I hereby request that a seizure warrant as authorized under Title 18 U.S.C., Section 981(a)(1)(A) and 981(a)(1)(C) and Title 21 U.S.C. 853(f), be issued to seize the aforementioned PNC Bank account number xxxxxx8289 up to $125,043.49 including PNC Bank cashiers check number 23657 and all funds behind said cashiers check.

                                        Ronald D. Williams
                                        Special Agent, IRS-CI

Subscribed and sworn to before me

this _____ day of _____, _____.

_____   _____   _____
                             

UNITED STATES MAGISTRATE JUDGE